4-23CV-189-P

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
FEB 22 2023
CLERK, U.S. DISTRICT COURT
By [signature] Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

ANTHONY RATAIKO, 18080508
Plaintiff,

v.

Respondent.

SUPPLEMENTAL MOTION IN SUPPORT
OF PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S. C. § 2241

ANTHONY, Petitioner pro se, submits this Supplemental Motion in Support of his Petition for Relief under 28 U.S.C. § 2241.

JURISDICTION

Jurisdiction under 28U.S.C. § 2241 exists where a prisoner alleges "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Counts have recognized that habeas jurisdiction exists over prisoners' claims that the B.O.P. miscalculated his sentence, where a claim "if successful, would result in his speedier release from custody[.]" Eiland v. Warden Fort Dix FCI, 634 F. App'x 87, 89 (ed Cir. 2015); Moody v. Acting Warden T. Gubbiotti, Cov. No. 21-12004 (D. NJ. Oct 3, 2022). Likewise, this cliam that ANTHONY is entitled to earlier release from prison upon proper application of his First Step Act time credits ("TCs") is properly brought under § 2241 becasue he presents a challenge to the duration of his confinement.

THE FIRST STEP ACT/EARNED TIME CREDITS CLAIM

The question presented by the Petitioner is whether the First Step Act (hereinafter "FSA") allows the B.O.P. to implement a policy precluding federal prisoners with pending criminal charges or detainers from having their accrued earned time credits (hereinafter "ETC") applied to afford them early release. The FSA does not state anywhere explicitly that the B.O.P. may do so, nor does the B.O.P.'s recently-finalized implementing regulation (28 C.F.R. § 523.44).

Since this is a case in which an agency's statutory interpretation is at issue, the Court must begin with the "now-canonical formulation" of the salient questions:

> "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." First, applying the ordinary tools of statutory construction, the court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. City of Arlington, Texas v. Federal Communications Commission, 569 U.S. 290, 296, 133 S. Ct. 1863, 185 L.Ed.2d 941 (2013)(quoting Chevron, 467 U.S. 842-43).

Federal prisoners who participate in and complete eligible evidence-based recidivism reduction programs and/or productive activities "shall" earn ETCs pursuant to the calculation formula provided in the statute. 18 U.S.C. § 3632(d)(4)(A). Under Section 3632(d)(4)(C), these earned ETCs "shall be applied toward time

in prerelease custody or supervised release." The statute does not say "may" be applied or are to be applied in the B.O.P.'s discretion, nor does it contain any language that rationally can be read to modify the simple and straighforward "shall be applied" directive. Consistently, the second sentence of the statute states that the B.O.P. "shall transfer" prisoners who are eligible under 18 U.S.C. § 3624(g) into either prerelease custody or supervised release. This language is a mandatory directive. The only discretionary aspect of § 3632(d)(4)(C) is that the B.O.P. gets to pick which of these two options for early release "shall" be provided to the prisoner in the fulfillment of the B.O.P.'s mandatory duty to transfer a prisoner upon mandatory application of ETC's.

The FSA expressly provides for which prisoners are "ineligible" through Section 3632(d)(4)(D)-(E). This FSA statute denominates "ineligible" prisoners as prisoners who have been <u>convicted</u> of any of the federal crimes or who are subject to a <u>final order of removal.</u> There is nothing in this clear language that can be read or stretched to encompass prisoners who have been charged with, but not yet convicted of, crimes or who have detainers.

The FSA's delineation of who is an "eligible" prisoner is set forth in § 3624(g). It states that an "eligible prisoner is one who has (1) earned ETC's in an amount equal to the remainder of his term; (2) either a demonstrated recidivism risk reduction as shown by periodic risk assessments or maintained a minimum or low recidivism risk during his term of imprisonment; (3) had

the remainder of his term computed; and (4) if being placed on supervised release, has been determined to be a minimum or low risk to recidivate pursuant to his last reassessment, or if being placed in prerelease custody, has been determined to be a minimum or low risk to recidivate pursuant to his last two reassessments or had a petition to be transferred to early release approved by the warden. There is nothing in § 3624(g) which says or implies that if the B.O.P. already has determined that a prisoner is a minimum or low recidivism risk through past periodic risk assessments or otherwise, the B.O.P. then possesses the further discretion to impose a new and additional precondition to early release, namely, that the prisoner presently must be free of pending criminal charges or detainers. Indeed, § 3624(g) states just the opposite, namely, that the FSA's early release provision, whether through prerease custody or supervised release, "applies" to a prisoner who has been found to meet the four § 3624(g) criteria.

In sum, under the clear terms of § 3632(d)(4)(C), a prisoner who has met the four criteria of § 3624(g) is "eligible" for early release, "shall" have his ETC's applied, and "shall" be transferred to one of two early release options. In the FSA, Congress utilized "both mandatory words and permissive words," and its "intent was clear in each instance." O'Bryan v. Cox, No. CIV 21-4052, 2021 WL 3932275, at *3 (D. S.D. Sep. 1, 2021).

Several additional matters underscore the mandatory nature of the FSA language. First, like the FSA itself, the B.O.P.'s implemmenting regulation, 28 C.F.R. § 523.44, is bereft of any

indication that the B.O.P. possesses the discretion is now claims it possesses to impose an additional precondition on prisoners who seek early release through an application of the ETC's. No mention is made that inmates who have pending criminal charges or detainers are similarly ineligible - an exclusion from eligibility that plainly would have been a relevant matter to raise if the B.O.P. was considering adding it to the statutory criteria, as it now apparently claims it can do.

In its Final Rule, the B.O.P. plainly recognized and acknowledged that it lacked the authority to modify the FSA's statutorily-designated categories of which prisoners are eligible or ineligible to earn and have ETC's applied so as to result in early release, a position that is direcly contrary to what Petitioner has been told. The Final Rule gave no indication that the B.O.P. believed itself to possess the authority and discretion to impose additional limitations on which prisoners may obtain early release under the FSA.

The relevant portions of the FSA are not ambiguous or inoomplete and Congress's intent is clearly expressed through mandatory statutory language. The language of the FSA shows that Congress made a conscious choice to do three things. One, by its use of "shall be applied" and "shall transfer" language in § 3632(d)(4)(C), Congress made the application of earned ETC's to effect early release mandatory for prisoners "eligible" under § 3624(g). Two, by § 3624(g), Congress spelled out the prerequisites for a prisoner to be "eligible," which have been described earlier and do not contemplate any additional criteria or precondition

to release akin to those suggested by the B.O.P. Third, by § 3632 (d)(4)(C), Congress explicitly determined which prisoners are "ineligible" to have the FSA's ETC and early release provisions applied to them, and none of these expressly delineated categories to include prisoners who have pending charges or detainers. Had Congress wished to include prisoners with pending charges or detainers among the categories of prisoners who are "ineligible" under the FSA it could and would have done so. The Congressional intent expressed through the FSA's mandatory provisions precludes interpreting the pertinent language of the FSA to allow the B.O.P. to impose the additional precondition to early release eligibility contemplated by the B.O.P.'s actions. Such an interpretation would be contrary to the clear and unambiguous mandatory language that requires application of earned ETC's for eligible prisoners and then transfer to early release.

"[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others," which is "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L.Ed.2d 391 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" "When the words of a statute are unambiguous ... judicial inquiry is complete." Id., at 254. When the intent of Congress is clear, as here, there is no need to engage in a further administrative agency deference analysis under Chevron. See City of Arlington, Texas, 569 U.S. at 296.

By its terms, the FSA has told the B.O.P. that it "shall" apply their earned ETC's and "shall" afford them an early release. Allowing the B.O.P. - on a belated and after-the-fact basis - to purport to write into the FSA statutes a discretion for itself that does not appear therein and to snatch away from prisoners whose efforts have earned them ETC-related benefits not only is unfair but would be contrary to the FSA's goal of incentivizing prisoners to engage in these salutary programs and activities.

Apparently, the B.O.P. is relying on its Program Statement 7310.04, pertaining to Community Corrections Center (CCC) Utilization and Transfer Procedure, and determining that any First Step Act ETC's cannot be applied because of an active detainer for a pending deportation hearing. But 18 U.S.C. $ 3624(g)(2) is the statute that defines the types of prerelease custody that the B.O.P. may place an inmate in <u>Home Confinement and RRC's</u>, and does not apply to the provisions of the First Step Act.

Furthermore, Petitioner's detainer applies to a <u>deportation hearing</u>. Since the hearing has not yet been held, and these proceedings will remain pending until such time as Petitoner is released from custody of the B.O.P., applying his earned time credits will only affect the date of the hearing, and not any transfer to CCC or home confinement. Therefore, PS 7310.04 cannot apply to Petitioner. Even if the B.O.P. must ultimately honor the detainer, Petitioner contends that the B.O.P. must immediately calculate and apply his FSA credits and determine whether he is released to deportation officials or to immediate supervised release.

CONCLUSION

There is no statutory provision or B.O.P. regulation that precludes application of ETC's toward early supervised release of prisoners who have detainers lodged against them. As Petitioner suggests, the provisions regarding detainers in B.O.P. Program Statement 7310.04 apply only to prerelease custody to residential reentry centers and home confinement. Supervised release is different because it does not involve B.O.P. custody. "[S]upervised release commences on the day the person is released from imprisonment ... ." 18 U.S.C. § 3624(e); see United States v. Johnson, 529 U.S. 53, 57, 120 S. Ct. 1114, 146 L.Ed.2d 39 (2000)("Supervised release does not run while an individual remains in the custody of the Bureau of Prisons.").

When a prisoner is subject to a detainer, the B.O.P. cannot immediately release a prisoner without notifying the appropriate officials to determine whether they will take custody of the prisoner. This would only appear to present a problem if the B.O.P. has not calculated a prisoner's earned ETC's in sufficient time to give the authorities notice, typically no later than 90 days before the supervised release date, to determine whether they will take custody of the prisoner.

For all the foregoing reasons, Petitioner respectfully requests the Court forgive the exhaustion requirement of administrative remedy, in particular the lack of time to exhaust and still receive his earned time credits.

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury and 28 U.S.C. § 1746 that I have placed a true and correct copy of this Petition for Writ of Habeas Corpus and Supplemental Motion in Support with prison officials for mailing via USPS, first-class mail, postage prepaid, to the following:

Placed with officials for mailing this 14 day of Feb, 2023.

[signature]

RELIEF REQUESTED

Petitioner requests this Honorable Court grant the following:

1. Grant his Petition for Writ of Habeas Corpus;

2. Order the B.O.P. to immediately calculate his earned time credits under the First Step Act;

3. If Petitioner has earned sufficient time credits under § 3624(g)(1)(A), give notice to the authority issuing the detainer notice of his newly calculated release date.

Submitted this 14 day of Feb, 2023.

Rafalko Anthony
#18080508
Federal Medical Center
P.O. Box 15330
Fort. Worth, Tx 76119
LEGAL MAIL
X-RAY

To: CIARK OF THE COURT
501 West 10TH st
DAllAS TEXAS 76102

RECEIVED
FEB 22 2023

